## CHARLES TREAT'S APPEAL FROM PROBATE.

## CHARLES TREAT *vs.* HARVEY TREAT.

A testator gave all his estate, subject to certain bequests, to his nephew, *C*, provided he should relinquish all claim to his father's estate. Held that this meant that *C* should relinquish his interest in his father's estate to his brothers and sisters, who were heirs with him.

The will provided that if *C* should not relinquish his interest in his father's estate, the property given him should go, one quarter to the heirs of *C's* father and the rest to other parties named. An arrangement was entered into by *C* and all his brothers and sisters except *H*, who was not present, and by an aunt, by which *C* was to relinquish his interest in his father's estate to one of his sisters and the aunt was to convey certain real estate to his two brothers *H* and *M*. The conveyances were made accordingly and *H* entered into possession of the land conveyed to him, but in ignorance of the arrangement under which it was conveyed. The land was worth ·more than the share he would have received of *C's* interest in his father's estate, and he retained possession of it for four years after he had learned of the arrangement. Held that his assent to the arrangement would be inferred, and that there was no forfeiture of *C's* interest under the will of his uncle.

Where an arrangement is manifestly for the benefit of a person, slight evidence of his assent to it will be sufficient.

A court of probate has no power to decree a forfeiture under the conditions of a will.

APPEAL from a decree of probate, and a petition in equity, reserved by the Superior Court, on facts found, for the advice of this court. The two cases involved the same facts and were heard together. The facts are sufficiently stated in the opinion.

*O. S. Seymour* and *A. S. Treat*, for the appellant and petitioner.

*Hubbard*, with whom was *Andrews*, for the appellee and respondent.

HINMAN, C. J. These two cases relate to the settlement of the estate of Stephen Treat, who died in 1849. The first is an appeal from an order of distribution made upon the ap-

plication of Harvey Treat, upon his petition to the court of probate made in 1866, several years after the estate appeared to have been settled, claiming that Charles Treat, executor of Stephen Treat's will, had procured an order to sell real estate of the deceased, which for reasons stated in his petition he claimed to be void, and that the sale made under the order was also void ; and claiming also, that, by the will of Stephen, Charles Treat was to have the real and personal estate of Stephen subject to certain bequests, and also subject to a provision that he should relinquish to the other heirs of his father, Daniel A. Treat, who had died previous to Stephen, (Harvey Treat being one of the heirs,) all the claim he had to his father's estate, and devising over his estate to other parties in case Charles should neglect and refuse to relinquish his interest in his father's estate ; and claiming that Charles, by so neglecting to relinquish his interest in that estate, had forfeited his interest in Stephen Treat's estate ; and that he, Harvey Treat, and others were entitled to the same under Stephen Treat's will ; and praying for the removal of Charles as the executor of that will, and for an account of the rents and profits of the estate while in his hands, and for a distribution of the estate to himself and others, as being entitled to it under the will. On this application the court of probate among other things found that Charles Treat had forfeited his interest in Stephen's estate, for the reasons alleged in the petition, and that Harvey was entitled to a distributive share thereof, and thereupon ordered Charles Treat to account for the rents and profits of the estate, and that the estate be distributed to the other devisees than Charles, of whom Harvey was one.

We are clearly of opinion that this finding and decree of the court of probate are erroneous, and must be reversed. Technically this finding is directly contrary to a former finding of the same court, made on the settlement of the administration account of the executor, on the 25th of June 1853, when the court of probate expressly found the interest of Charles Treat in his father's estate to be of the value of two hundred and forty dollars, " and that said Charles had given

up the same according to the provisions of said will." It is not perhaps important whether this finding is valid or not. It was, to say the least, as valid as the opposite finding upon this petition of Harvey, and being directly contrary to it, in the important particulars in respect to the forfeiture by Charles of his interest under the will, it ought, it would seem, to have prevented an express finding to the contrary on a subsequent occasion. If the former finding was void, and not merely erroneous, the court might disregard it. But, if it was competent for the court to find that Charles had forfeited his estate, it obviously was as competent for a former court to find that he had not. But however this may be, we are of opinion under the circumstances that Charles had not forfeited his estate under the will. On the contrary we think the estate had become vested in him under the provisions of his uncle's will, and that it was not competent for the court of probate to divest him of it. And we prefer to place the case upon this ground, because it disposes of the petition of Charles Treat to redeem the premises claimed to be forfeited and ordered to be distributed, and renders any relief under that application unnecessary.

That part of Stephen Treat's will under which the questions in the cases arise, is in these words : " I give and bequeath to Charles Treat and his heirs the whole of my real and personal estate, subject to all the foregoing bequests, provided nevertheless that he shall take care of me and my wife during our natural lives and provide us with the necessaries and comforts of life, and also relinquish all claim, right or title he has or ought to have in or to any part of his father Daniel A. Treat's estate, and also provided the said Charles Treat shall die without leaving any offspring, begotten by him in the bonds of wedlock, him surviving, or on the failure of such offspring, then, in the event that he shall neglect or refuse to support or take care of me and my wife during our natural lives, or shall neglect or refuse to relinquish his claim to his father's estate, or if he shall die without offspring as aforesaid, then I hereby give and bequeath one-half of the remainder of my real and personal estate to the heirs of

Daniel A. Treat deceased, and to the heirs of Joseph Treat deceased, jointly," &c. The widow of Stephen Treat died in 1851. Charles Treat, before the death of Stephen, conveyed the share of his father's estate which belonged to him and that was not encumbered by dower to his brother Harvey, but he had remaining in him an interest in that part of the estate which was set to his mother as dower; and there was a family arrangement between all the heirs of Daniel A. Treat, except Harvey, by which Lucretia Treat, a sister of Stephen and the aunt of Harvey and Charles, was to convey a lot of land to Harmon and Harvey, both children of Daniel A. Treat, and Charles was to relinquish his interest in the estate of his father to his sister Mary; and conveyances were accordingly made pursuant to this arrangement. Harvey, at the time the deed was made to him and Harmon, had not been notified of this arrangement. He went into possession of the land conveyed to him by his aunt, and has for many years occupied and claimed it as his own under that conveyance. The conveyance from Charles to his sister Mary was made in good faith, at the suggestion of his brothers, except Harvey, and under the advice of counsel, and as Charles supposed, in performance of the provisions of his uncle's will. And in 1862 Harvey had knowledge of the conveyance to Mary, and of the arrangement under which it was made, but has continued to occupy and claim the property conveyed to him by his aunt.

It would obviously be inequitable for Harvey to keep the property thus conveyed to him by his aunt, and still enforce his right to a share in his uncle Stephen's estate against his brother Charles, who, although he has given no general conveyance of all his interest in his father's estate, has still parted with the whole of that interest under the idea that he was performing the conditions of the will. It is quite clear that the decree of the court of probate must be reversed on the ground that the court had no power to find and decree a forfeiture of his estate under the will. The will gives him the fee of the real estate subject to the legacies and bequests mentioned in it, and also subject to the life estate of Ste-

phen's widow, and to the other conditions contained in it. The conditions have all been strictly performed except this in relation to the relinquishment of his interest in his father's estate. The condition in respect to his leaving offspring is obviously one that was not intended to prevent the immediate vesting of the estate, since, at the time the will was made, it was uncertain whether it would ever be performed, and was therefore a condition subsequent. And in respect to the provision that he should relinquish his claim to his father's estate, we think that too is a condition subsequent. It was suggested that that condition was void, because it does not appear to whom that relinquishment was to be made. But we have no doubt it was intended to be made to his brothers and sisters, the other heirs of his father. It is true this is not fully expressed in the will, yet it is implied from the word "relinquish" itself, which, we think, means that he was to surrender and give up his claim as one of his father's heirs ; and as it could not be intended that this surrender should be made to a stranger, the intention must have been that it was to be made to the other persons interested, as he was, as one of his father's heirs. The question then in this part of the case is, whether this condition in respect to relinquishment has been so far performed that Harvey cannot take advantage of it. And we think it has been. When Harvey instituted proceedings in the probate court he had known for some years of the family arrangement between Charles and the other heirs of his father. He knew also that he was a gainer by that arrangement, as the land conveyed to him by his aunt is found to have been more valuable than his interest in Charles's share of his father's estate. And finding this arrangement made, and, so far as it could be without his consent, carried into effect, he determines to keep the property conveyed to him by his aunt. But he could not equitably do this and insist at the same time upon his portion of Charles's inheritance. He should have repudiated the arrangement entirely or he ought to be bound by it. And as he chose to retain the consideration under which Charles conveyed to his sister, we think he ought now to be

held to have assented to the whole arrangement. Had he been fully informed at the time the arrangement was first made the presumption is very strong that he would have assented to it, because it was for his benefit. And his then taking possession of the land conveyed to him under it, would have been evidence of his assent to it amply sufficient for that purpose. And we do not see why his retaining the possession after he had full knowledge of the circumstances under which his title accrued, for a period of more than four years, ought not to be held to be equally binding upon him as evidence of his assent. Where the transaction is so manifestly for his benefit, slight evidence of his assent to it ought to be deemed to be sufficient.

We are of opinion, therefore, that at the time Harvey Treat commenced proceedings in the probate court to obtain a share of his uncle Stephen's estate, on the ground that his brother's estate under the will was forfeited, by reason of his not having relinquished to the other heirs of his father his share in his father's estate, Charles Treat's estate was not forfeited, and therefore that Harvey Treat is not entitled to any share in his uncle Stephen's estate under the will.

It would have disposed of the case arising on the appeal from the decree of probate, and have been a sufficient reason for reversing that decree, to merely hold, as we do, that the court of probate had no power to decree a forfeiture. Questions of this sort have always been brought to the Superior Court, and usually in the form of an action of disseizin by the party claiming title against the party in possession who is claimed to have forfeited his estate. Such were the cases of *Wheeler* v. *Walker*, 2 Conn. R., 196, *Green* v. *Dennis*, 6 Conn. R., 292, and *Dickinson* v. *Hayes*, 31 Conn. R., 417. And we believe this is the first attempt to try such a case by bringing a petition for that purpose to the court of probate. The former finding of the court of probate, that Charles Treat had performed the conditions of the will, we have said, was certainly as valid as the subsequent finding to the contrary. We might well have said there was altogether more ground for such a finding, because it was done appar-

ently in the course of the settlement of Stephen Treat's estate. But we prefer to express no opinion on that question, as it is wholly unnecessary for the decision of the cases. And as we are of opinion that Charles Treat has a vested estate under the will of his uncle Stephen, it is not necessary to consider further the questions which were raised on his petition to redeem. We therefore advise the Superior Court that that petition be dismissed, and that the decree of probate appealed from be reversed.

In this opinion the other judges concurred.